Good morning, Your Honors, and may it please the Court. My name is Richard Antonini. I represent Carolyn Davis, the appellant and debtor in this case. One of the things that struck me about reading the briefs from the other side in this case is the use of the word unilateral, that we're trying to do something unilaterally. And I think ---- Well, counsel, does motive even matter? I mean, really, it's kind of a dry legal issue, where the aggregate debts include claims that can be satisfied against real property of the debtor, even though there can be no personal judgment against the debtor for those claims. That's exactly right. That's our issue. Right. What's your best authority for the proposition that you would like us to adopt, which says it doesn't count unless it can be satisfied personally? Probably the Johnson v. Homestate Bank case for one thing, Your Honor, and then the Scovis case for another, which says that the debtor's schedules least control the initial jurisdiction question. Well, so in Johnson, though, the Supreme Court found the creditors of a farmer could proceed in rem against the farmer's property, even though the farmer's debts were previously discharged as part of Chapter 7 bankruptcy, right? That's exactly what the Supreme Court ---- So why doesn't the same theory apply here with respect to calculating the aggregate debt under Chapter 12? I'm sort of figuring if that's your best argument, I'm kind of giving you what the ---- Because, Your Honor, the ---- because, you know, we agree that the debts can be enforced against the property. The schedules say that the value of the property is a certain amount. I think the original schedule said 1.6 million and change. And for jurisdictional purposes, that should control, you know, subject to some kind of argument of bad faith. In addition, there is, and throughout the proceedings in the Bankruptcy Court, there was no evidence presented in the form of appraisals, expert testimony or otherwise that should ---- But, counsel, I thought there wasn't any argument about the arithmetic. That is, if the what I'll call the real property only debts are excluded, you're under the threshold, but if they're included, you're over the threshold. Yes. Right. I think that's undisputed, that those ---- the arithmetic would lead you to that conclusion. Yes. Okay. And I ---- You were bound by Quintana or whatever, which is problematic for you. I don't think you're bound by Quintana, and I think Quintana is distinguishable. I think Quintana came before Scobus, and Scobus changed the universe a little bit in the sense that it said, at least when it came to a jurisdictional debt cap issue, the schedules control. It's a little bit like, if I may use an analogy, it's like coming up in a 12-B-6 motion, and the usual rule is that the allegations of the complaint at least control, and so Scobus seemed to extend that idea to at least the jurisdictional cap question on a bankruptcy. So I think in a sense that Quintana has been superseded by Scobus. And also, the big problem in Quintana, as this Court found, is that no one really knew what the amount of the ---- the value of the property was. It was a farm in Idaho, as I recall. No one knew what the value of the property was. There had been no appraisals. There had been no testimony. And as this Court found, it could be, you know, the value of the property could have been the total amount of the debt and more. In this case, the only evidence before the bankruptcy judge was that the properties were well below $3.7 million, even by, I think, the appraisal done by the main creditor, which at the time was Chase and is now U.S. Bank through an assignment of some sort. I have a question about the words debt and claim, which are used in the bankruptcy code. I think how extensive ---- it seems that the definition of a debt incorporates the definition of a claim, but does the reverse apply? Your Honor, I'm not quite sure, because the definition of a debt doesn't use just the  It uses the word liability on a claim. So there are two different issues in that. One is, you know, is there a claim out there? And the second is, when it talks about liability on a claim, you know, what is the extent of that claim? What's the value of that claim, particularly in light of a Chapter 7 discharge which eliminates personal liability, which, by the way, was not an issue, which didn't come up in Quintana. And I think, you know, and I think the problem I really have with the creditor's approach to this case is we have to take at face value what they say their claim is worth. I don't think in any other form of civil litigation, we have to do the courts say you have to take this defendant's claim at face value and it can't be contested when it comes to jurisdiction. I don't think that exists anywhere else. And I just, it's a proposition to me as a non-bankruptcy lawyer, but as a civil litigator, it doesn't make sense. You know, they say it's $4.1 million. We say it was $1.64. And usually when it comes to a jurisdictional question, when it comes to the outset of a case, the plaintiff is the master of her complaint. Sotomayor, I thought that you were not contesting the accuracy. You're contesting the legal question, whether claims that can't be satisfied personally should be included. But I read this as, I thought I'd asked you this earlier, but you're not contesting the accuracy of their claim to the $4.1 in the sense of it's inflated or they've reversed their numbers or something like that. No, Your Honor. Well, we're not, we're not really saying that. We're saying that they're not entitled to $4.1. They're entitled to the value of the property. And that is the extent of their claim. That is the extent of the liability on the claim. Now, they can always come in later and try to prove that, you know, it actually is, the value of the property is actually $4.1 million. They can do that in several different ways. They didn't do that here. They presented no evidence that it was 4 point, you know, the value of the property, which is all they're entitled to after the Chapter 7 discharge, was $4.1 million or anything close to it. Do you want to save a little bit of time? Yes, I'd like to save maybe two minutes for rebuttal. Okay. So maybe I should sit down. Thank you. We're here from the other side. More sides. Morning, Your Honor. Richard Esterkin, Morgan, Lewis, and Bacchius on behalf of U.S. Bank as trustee. And I'm going to try to speak for five minutes and reserve five minutes for counsel for one West Bank. Morning. Morning. And having only five minutes, I'm going to try to be really brief and succinct. First of all, the court counsel referred to the Scovis case. We don't believe that Scovis has any applicability. Could you speak a little louder, please? Sure. We don't believe that Scovis has any applicability under this circumstance. Scovis was a Chapter 13 case, not a Chapter 12 case. And the test for eligibility in Chapter 13 requires separate measures of secured and unsecured debt, whereas the test for eligibility in Chapter 9 speaks to aggregate debts, and therefore, the notion of bifurcating partially secured claims into a secured portion and an unsecured portion has no application whatsoever in the Chapter 12 context. Secondly, and I think this is really the main point here, the under these circumstances at the commencement of the case, which is the time period that Section 10118A requires us to look to, the secured creditors have a claim for the full amount of their debt without regard to the value of their security. The only point in time at which the claim actually gets reduced to the value of the security is upon confirmation of a Chapter 12 plan, which, to use the bankruptcy term, strips down the lien to the value of the collateral. And so, because 10118A requires the court to look to the amount of the claim at the petition date and not at the conclusion of the Chapter 12 case, the actual amount of the debt is what counts for the Chapter 12 limit, not the value of the property. And there's some important principles in bankruptcy law that dictate that result. First of all, under Section 1022, a claim consists, includes rights against the property of the debtor. And therefore, because the lien secures the entire debt, the rights against the property of the debtor that exist at the petition date are equal to the amount of the debt, not the value of the property. Secondly, under Duesnip v. Tim, the U.S. Supreme Court case, the Supreme Court held that any appreciation in value of the property of collateral between the petition date and the conclusion of the bankruptcy case inerrs to the benefit of the secured creditor. So if counsel were to import a valuation at the petition date, that would eliminate the possibility of the secured creditor recovering the appreciated value between the petition date and the conclusion of the bankruptcy case. It wouldn't necessarily, because as you point out, in the other direction, the jurisdictional question is just looking at a point in time for the sake of deciding where the petition or how the petition can be filed. I don't follow that that determination, that the claim is above or below a threshold, would preclude a later change up or down. Well, one question that has to be answered if you're going to value the property in the manner that's suggested is, well, how do you value it? Section 506a commands that valuation be done with an eye towards the purpose of the valuation. And what's the purpose of the valuation? If you were to value it at the petition date through some court-determined value, does the court use for sale value? Does the court use ordinary course transaction value? How do you value the property? There's no answer to that question when you are trying to value in the abstract as you would have to do in order to adopt the position urged by the appellant in this case. In addition, you don't get to the valuation issue until after the petition is filed. And once again, the statute says that you look at debts at the petition date, and you're using it after the petition date valuation in order to make that initial determination, which we think is improper. Well, I guess in a practical sense, if as a civil litigator, if you were allowed to contest that and say, well, this is what the properties were, that, you know, that, how does that ultimately affect a creditor like the creditors in this case if they get to go through this type of bankruptcy? I mean, how does it affect their rights when you come out on the other side? Well, I think I understand the question. The valuation determination at some midpoint in the bankruptcy for some purpose doesn't affect their rights at all is the answer. As we pointed out in our brief, for example, if notwithstanding an early valuation, if the property were later to be sold, the creditor would retain the right to credit the entire amount of the claim. And that's just illustrative of the principle. Okay. I don't want to take up the other person's time. Okay. Thank you very much. Good morning, Your Honors. My name is Joshua DelCastillo, counsel for the appellee, One West Bank N.A., formerly known as One West Bank FSB. Your Honors, the appellant is asking the Court to rewrite the plain language of the Bankruptcy Code in such a way that it is internally inconsistent and irreconcilable with the decisions of the United States Supreme Court and this Court's decision in Quintana. Now, given the issues already addressed by Mr. Easterkin. Is there already a split in the circuit as to how this is being treated? There's not, Your Honor. The appellant's reliance on Scovis is misplaced. They read Scovis for the proposition that the unsecured portion of a secured creditor's claim should not be counted at all for eligibility purposes. But that's not what Scovis says. Scovis simply says that the undersecured portion is treated as unsecured. But unsecured debt. But it's still debt. That's correct, Your Honor. Unsecured debt is still debt. And because the eligibility standard that's applied for a Chapter 12 bankruptcy is the aggregate debt, which this Court has recognized is the broadest possible definition of debt, the fact that that debt is undersecured or unsecured doesn't matter for the purposes of the eligibility determination. So hypothetically, if we were to write an opinion, and I'm just saying this hypothetically, the way that the appellant would be asking, would we be creating a split in the circuit? I think the Court would be doing two things. It would be, yes, it would be. Well, you're already saying it would be going against the plain language. Correct. It would be going against the plain language of the Code. It would be, at a minimum, essentially overruling the Court's decision in Quintana, which is exactly on all four corners with the issue here. The fact that Chapter 7 discharge was not precedent to the Chapter 12 filing in Quintana is irrelevant, because before the Chapter 12 filing in Quintana, the creditor stipulated to waive its deficiency rights as against the debtor. So that's effectively the same thing. If you accept the debt, the appellant's position, you are essentially saying that every creditor who holds a nonrecourse loan can't have that debt counted for eligibility purposes. In fact ---- Okay. So we would be not following the bankruptcy code, the plain language. We would not be following our own precedent. Would we be creating a split in the circuit? No. I mean, are there other circuits? Oh, no, no, certainly not.  In fact, I think the bankruptcy appellate panel's memorandum decision is actually quite well-reasoned and beautifully articulated, with the exception that at the very beginning of the opinion, it says that there's a split of authority on the issue. In fact, if you look at the findings of the Sixth Circuit, which were cited in part in some of the other cases that favor the appellee's position here, which is really the only other place where you find that detail of analysis. They're entirely consistent with this Court's findings in Quintana. They're entirely consistent with the Supreme Court's decision in Johnson. So ---- But it's not consistent with the Sixth Circuit. No, it is. I'm sorry. It is. Which would be consistent? If we went his way or went your way? No. If you found for the appellees. Okay. All right. Right. Because ---- Can you just quickly tell me, because there's not a lot of time, do you think that the Johnson is clear on the point? The terms are treated as coextensive because they have to be. And this is as a consequence of the 102 analysis that Mr. Easterkin addressed earlier. 102 provides that any debt against an individual's property is a debt against the individual. And it's for this reason that the appellant's discharge in the Chapter 7 case is irrelevant to her eligibility for Chapter 12. Okay. A debt's always a claim, right? Correct, Your Honor. But is a claim always a debt? It is. All right. And that's under 102. That's the straight language from the statute. I think what I'd like to emphasize in my remaining seconds here is that accepting the appellant's position essentially requires that this Court would create a judicial exception to the Chapter 12 eligibility standard as articulated in the Bankruptcy  There is nothing in the Code, the legislative history or the relevant case law, that suggests that Congress intended for a debtor who could not qualify ex ante for a Chapter 7 or for a Chapter 12 to file a Chapter 7, obtain a discharge, and then use that Chapter 7 discharge to leverage herself into Chapter 12 eligibility. Thank you, counsel. Thank you, Your Honor. Mr. Antonini, you have some remote time remaining. Thank you, Your Honor. Going back to one of the questions I think the bench posed earlier, you know, is a claim the same thing as a debt? You know, if you look at the statutory language, there is more to a debt than being just a claim. There is liability, you know, liability for a claim. That is, that makes it a bit different. Well, that wasn't, I was just asking if the Bankruptcy Code used the language coextensive, not whether you can think of some other reason. I was asking. No, they are coextensive, but then the eligibility requirement is not, the definition  of a claim. I mean, it is liability on a claim. I think the, you know, and the appellees ignore the impact of the Chapter 7 discharge. There was no personal liability attached to Ms. Davis as a result of the discharge. And I think it is a real problem to come to say, well, now she still has personal liability for this, at least for the jurisdictional limit cap purpose, because we are asserting the full amount of our claim, even if the full amount of the claim is not necessarily secured any longer as a result of the Chapter 7 discharge. To me, that idea goes against, you know, goes against the very concept of the Chapter 7 discharge as it's. Right, but does it go against the language? That's what we have to look at, the language. I think it, I don't, I think it goes, I think it goes against. If the language is clear, then whatever you think it should be doesn't. Agreed. Isn't what we can do. Agreed. I think, I think it goes against the language in the sense that it goes against the idea of the concept of liability on the debt, of liability for the debt. Because liability is, means, you know, at least a plain meaning of it means, you know, amount. You know, what is the amount of the debt? The amount of the debt is here limited to the value of the property is because the Chapter 7 discharge took away personal liability, you know, personal. Does it make any difference? I'm looking at page 43 of the excerpts in the, in your client's schedules where she lists liabilities of $4.1 million. Does that matter? No. I think because if you read the schedules together, they break it down into a total amount and then a secured amount. And the secured amount in light of the Chapter 7 discharge is the amount of the liability. And if nothing else, they can always try to prove it otherwise. Nothing we're asking the Court here to do here today says they can't contest any of this. They can always contest it in any number of ways, just, you know, but we think at least for jurisdictional cap purposes, we've gotten past the jurisdictional cap. Thank you, counsel. Thank you, Your Honor. This testimony is submitted, and we appreciate the helpful arguments from all three counsels.
judges: Graber, Gould, Callahan